IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE STACY SYLVESTER LEE MERRITT, SR. § § § § § § § | 3:18-MC-00042-B |

### RESPONSE TO ORDER TO SHOW CAUSE

Stacy Sylvester Lee Merritt responds as follows to the June 4, 2018 Order to Show Cause (Doc. 1):

#### Summary of this Response

This Court concludes in its June 4 Order that Mr. Merritt should have reported proceedings in state district court in Collin County to this Court under Local Rule 83.8(d).

Mr. Merritt explains in this response that he engaged the undersigned counsel in connection with the Collin County state court proceedings, that his counsel negotiated the entry of a consent judgment in that case, and that his counsel concluded that that it was unnecessary to report the proceedings to the clerk of this Court, because Mr. Merritt did not "lose or relinquish" the right to practice in any court of record. The consent judgment recognizes and preserves Mr.

Merritt's right to seek admission *pro hac vice* in Texas state courts, and also expressly provides that: "Nothing in this Judgment shall be deemed to preclude Defendant from advising clients or potential clients regarding their rights under Federal law or representing clients in Federal courts in matters arising under Federal Law."

## Summary of Facts

Lee Merritt is a social activist and civil rights lawyer. After surviving his childhood in South Central Los Angeles, Mr. Merritt secured a scholarship to attend Morehouse College in Atlanta.  Upon his graduation from Morehouse in 2005, Mr. Merritt was accepted as a Corps Member into Teach for America, and was assigned to Veterans Memorial Middle School in Camden, New Jersey.[1] He remained in Camden for two years, teaching United States history. After his two-year term in Camden, and still with Teach for America, he returned with his wife to Atlanta, where he taught speech, a course in law and social issues, and coached at the high school level for another two years at the newly-opened South Atlanta Law

---

[1] Teach for America trains and places promising college graduates to teach in high-needs urban and rural schools across the United States. Mr. Merritt applied for an assignment in South Central L.A., but was assigned to Camden. Camden at the time had been consistently ranked as the most dangerous city in the country, and continues to rank in the "bottom ten." He accepted, and completed, the full two-year term of his assignment.

and Social Justice School. He decided to apply for law school to pursue a career in civil rights law, and in 2009, he was accepted for admission to Temple University's Beasley School of Law in Philadelphia. He moved with his wife back to Camden (across the Delaware River from Philadelphia), and the couple later were able move back across the river to Philadelphia to be closer to the law school.

Upon graduation from law school, Mr. Merritt accepted a position with the Philadelphia office of The Cochran Firm, where he had clerked as a law student. He had hoped, once he became licensed in 2012 (in both Pennsylvania and New Jersey) to gain exposure to civil rights matters, but was assigned primarily to automobile cases. In 2014, he left The Cochran Firm and started his own practice, in Philadelphia. He continues to make his living handling personal injury cases in Pennsylvania and New Jersey.

Mr. Merritt and his wife had begun to experience marital difficulties during his third year in law school, year and his wife eventually moved, with the children of the marriage, to her parents' home in Texas. In early 2015, Mr. Merritt followed his wife to Texas in an attempt to save his marriage. Once in Texas, the marital relationship improved, and Mr. Merritt commenced the process of applying for the Texas Bar and taking the Texas Bar exam. He also applied for employment as a

teacher pending the Texas Bar Exam. He continued to maintain both of his law licenses, his practice, and his apartment in Philadelphia. He also maintained (and still holds) his Pennsylvania driver's license and voter registration. Mr. Merritt and his wife ultimately were unable to reconcile, and they divorced in the summer of 2015. Mr. Merritt abandoned his plans to take the Texas Bar Exam, and returned to Philadelphia. He kept an apartment in Plano, for several reasons. He intended to return frequently to see his children, he had secured a job (as a recruiter) with the Dallas Independent School District, and he still wished to pursue a practice focusing upon social justice advocacy and federal civil rights cases, for both of which he perceived a need in Texas. His recruiting job with the DISD was uniquely suited to Mr. Merritt; there were no extended hours except when traveling, and he had extended vacations (one month in the Summer and six weeks in the Winter). He continued to network with civil rights lawyers and social justice advocates across the country, and split his time (when he was not traveling for his job with the DISD) between Dallas and Philadelphia. He has continued to maintain an office and a docket of cases in Pennsylvania.

Between 2015 and 2016, Mr. Merritt accepted representation in a number of federal civil rights matters, in Texas and in Pennsylvania. He gained notoriety

within the social justice community, and sometimes invoked the ire of some of those that he opposed. One such occasion occurred in December of 2016, when Mr. Merritt was contacted by Jacqueline Craig of Fort Worth for potential representation. Ms. Craig believed that she had been treated improperly by a Fort Worth police officer after she reported an assault upon her seven-year-old son. Ms. Craig felt that the investigating officer had ignored her complaint, and explained that the officer had forced Ms. Craig to the ground, cuffed her, and taken her to jail. Based upon crude smart 'phone recordings taken by individuals who had witnessed the incident, Mr. Merritt and Jasmine Crockett (a Texas lawyer with whom Mr. Merritt had associated) concluded that Ms. Craig had a potential claim under the Civil Rights Acts. Ms. Crockett wrote to the the Fort Worth City Attorney and the Tarrant County District Attorney, requesting a copy of the arresting officer's "body cam" footage. She received no response. Mr. Merritt believes that he sent a follow-up email to the city attorney inquiring about the matter. The need for securing the "body cam" footage directly from law enforcement evaporated when the actual footage was released publicly. After the footage was made public, the Tarrant County District Attorney filed a complaint with the State Bar of Texas' Unauthorized Practice of Law Committee ("UPLC"), alleging that Mr. Merritt was

practicing unlawfully in Texas. Mr. Merritt in turn received a subpoena from the UPLC, to which he responded voluntarily. He produced all requested documents and agreed to travel to Fort Worth and submitted to examination by the UPLC's subcommittee. At the conclusion of the examination, the subcommittee chairperson advised Mr. Merritt that he had filed a defective motion for *pro hac vice* admission in a state district court matter, and strongly suggested that he withdraw from that case. Mr. Merritt complied, and withdrew from the case. The subcommittee chairperson also questioned whether letterhead and a website that had been used by Mr. Merritt and Ms. Crockett sufficiently disclosed that Mr. Merritt was not licensed in Texas—but merely disclosed those states in which he *was* licensed. Mr. Merritt and Ms. Crockett had ceased using the letterhead and the website had been taken down.

Shortly after Mr. Merritt appeared before the UPLC subcommittee, Mr. Merritt received notice that the regional counsel for the State Bar of Texas had initiated a grievance against him, alleging violation of Rule XIX of the Rules Governing Admission to the Bar of Texas, pertaining to applications for *pro hac vice* admission in four matters in Texas state courts. In essence, the grievance accused Mr. Merritt of misrepresenting in applications for admission for *pro hac*

*vice* that he was a resident of Pennsylvania, while he had an apartment in Texas, and that he therefore failed to qualify as a "nonresident attorney." Mr. Merritt promptly responded to the grievance in accordance with the applicable rules of disciplinary procedure. He explained that while he maintained an apartment in Texas, he resided in Pennsylvania and was licensed in Pennsylvania. Under the Texas Government Code, because he had a residence and was licensed in Pennsylvania, he was a "nonresident attorney." The Texas Government Code defines a "nonresident attorney" as a lawyer who "resides in and is licensed to practice law in another state but who is not a member of the State Bar of Texas." TEX. GOV'T CODE §82.0361(a).

Shortly after he filed his response, Mr. Merritt was advised by letter of October 13, 2017, that the Complaint had been placed on a Summary Disposition Panel Docket.[2] Mr. Merritt has received no further communication from the State Bar regarding the Complaint.

---

[2] Under the Texas Rules of Disciplinary Procedure, the Chief Disciplinary Counsel of the State Bar of Texas is required to undertake an investigation of any complaint alleging professional misconduct by a lawyer. Only when the Chief Disciplinary Counsel determines, after completing her investigation, that "just cause does not exist to proceed on a Complaint, the Chief Disciplinary Counsel shall place the Complaint on a Summary Disposition Panel docket." TEX. R. DISC. P. 2.13.

On January 29, 2018, the UPLC filed a lawsuit against Mr. Merritt in Tarrant County, alleging that Mr. Merritt had engaged in the unauthorized practice of law, and seeking a temporary restraining order enjoining Mr. Merritt from engaging in unauthorized practice. On the following day, the judge in Tarrant County denied the UPLC's application for a TRO. The UPLC nonsuited the Tarrant County lawsuit, and filed an identical suit against Mr. Merritt in Collin County. The Collin County judge signed a temporary restraining order, and set a hearing upon the the UPLC's motion for temporary injunction on February 8. The hearing became unnecessary, because the UPLC and Mr. Merritt reached an agreement to resolve the case by consent judgment. The terms of the consent judgment were agreed upon prior to the February 8 hearing date, but the formal consent judgment was not signed by the court until February 15.[3]

Since the Spring of 2017, Mr. Merritt has filed no action in any Texas court, and has not sought *pro hac vice* admission in any Texas proceeding. He has

---

[3]    The delay resulted in large part from the sudden illness of the undersigned counsel, who found it necessary to undergo emergency surgery the day before the hearing. His review of the form of the consent judgment was conducted while he remained in the intensive care unit. He was unable to return to full-time work until early April.

continued to investigate and pursue claims under the federal Civil Rights Acts, and he is an attorney or record in four cases now pending in the Northern District.[4]

No Violation of Local Rule 83.8(d)

Local Rule 83.8(d) requires that any member of the bar of the Northern District self report any instance in which the member has "lost or relinquished, temporarily or permanently, the right to practice in any court of record." This Court, in the June 4, 2018 Order to Show Cause (Doc. 1) stated that the consent judgment "permanently restrains and enjoins Merritt from, inter alia, practicing law in Texas state courts . . . ." The consent judgment, however, was not so broad.

Mr. Merritt, in consultation with the undersigned counsel (who had represented Mr. Merritt in both the Tarrant County and Collin County injunction suits), concluded and still believes that Mr. Merritt did not lose or relinquish any right that he had to practice in Texas state courts. Because he was not a member of the State Bar of Texas, his right to appear in Texas state courts was and remains limited to appearance *pro hac vice,* at the discretion of the presiding state court

---

[4] The cases are *Edwards v. Oliver*, No. 3:17-CV-01208-M; *Jones v. City of Mesquite*, No. 3:18-CV-00117-B; *Edwards v. Junior Statesmen of America Foundation, Inc.*, No. #:18-CV-01263-C; and *Craig v. City of Fort Worth*, No. 4:17-CV-01020-A.

judge or judges. The consent judgement that Mr. Merritt agreed upon expressly preserved Mr. Merritt's right to seek leave to appear *pro hac vice* in accordance with Rule XIX of the Rules Governing Admission to the Bar of Texas.

Although permitted to do so in the consent judgment, Mr. Merritt has not, since agreeing to the judgment, sought *pro hac vice* admission in any Texas state court. In fact, since the UPLC first raised objections in the Spring of 2017 in connection with matters in which Mr. Merritt had sought *pro hac vice* admission, he has not appeared in any Texas state court on behalf of any client. He has refrained from doing so because some members of the UPLC subcommittee before whom Mr. Merritt appeared in the Spring of 2017 questioned Mr. Merritt's ability to appear *pro hac vice*. Some members of the subcommittee believed (like the Tarrant County District Attorney) that because Mr. Merritt maintains a residence in Texas, he is precluded from seeking *pro hac vice* admission in Texas courts relying upon his licensure in Pennsylvania, where he also maintains a residence.[5] Mr.

---

[5] Such an interpretation of Tex. Gov't Code §82.0361's definition of "nonresident attorney" presents a common error of logic, so common that there is even a name for the error: *non distributio medii*, or the fallacy of the undistributed middle term. See generally R. ALDISERT, LOGIC FOR LAWYERS at 10-3 (1992); *Hicks v. State*, 241 S.W.3d 543 (Tex.Crim.App. 2007). By the very language of §82.0361, residence in Texas is not material; it is not even mentioned. Texas residence, or Texas nonresidence, is not a component of the statutory definition. Under the statute, a lawyer licensed in another state, who maintains a residence in that state, but who has no Texas law license, is a "nonresident attorney" entitled to seek admission *pro hac vice* in Texas state courts.

Merritt has nevertheless elected not to seek *pro hac vice* admission in Texas courts, although he maintains the right to do so in the consent judgment.

Mr. Merritt has chosen to focus his efforts upon pursuit of civil rights claims in the federal courts. In the federal courts, the ability of a lawyer licensed in one state to assert federal claims in federal courts in which he or she has been admitted was, at least at one time, a hotly contested matter. Following the adoption of the Civil Rights Acts of 1964 and 1965, enforcement actions encountered difficulty. Particularly in the South, the Acts were defied, and in may instances ignored. There were few lawyers willing to enforce the Acts. For example, at the time the 1965 Voting Rights Act was signed into law, there were only four Black lawyers in the entire State of Mississippi. Sherman, *The Right to Representation by Out-of-State Attorneys in Civil Rights Cases,* 4 HARV. CR-CL L. REV. 65, 76 (1968). An article in the Mississippi Law Journal, by the Attorney General of Mississippi, actually complimented the Mississippi bar's unwillingness to accept Civil Rights cases: "The Southern bar has refused and I think rightfully so, to become free counsel for a band of professional self-styled protestors, crusaders, and demonstrators." Patterson, *Southern Justice*, 37 MISS. L.J. 403, 404 (1966). Civil Rights cases, out of practical necessity, proceeded in the federal courts, with out-of-state lawyers,

and it became commonplace for the out-of-state lawyers to rent residences and offices across the South. Some of those lawyers were arrested, under statutes criminalizing unauthorized practice of law by out-of-state lawyers. *E.g.*, *Sobol v. Perez*, 289 F.Supp. 392 (E.D.La. 1968)(Three judge panel enjoined prosecution of out-of-state lawyer for "unautorized practice"). Others were simply denied the right to appear—even in federal district courts.

The matter came to a head in Mississippi's Southern District, after United States District Judges Harold Cox and Dan Russell denied *pro hac vice* admission to lawyers for failing to comply in one particular or another with rules adopted by the Southern District limiting the number of *pro hac vice* appearances by any lawyer to "one case in any calendar year," limiting admission only to lawyers with five years' experience, and foreclosing *pro hac vice* admission entirely to any lawyer who took up residence, even a temporary residence, in Mississippi.

The Fifth Circuit Court of Appeals held the rules invalid, including the rules' foreclosure of *pro hac vice* representation to out-of-state lawyers who took up residence in Mississippi. *Sanders v. Russell*, 401 F.2d 241 (5th Cir. 1968). Now, as a matter of federal law, licensed attorneys asserting claims under federal law are entitled to pursue those claims, before federal courts and federal agencies, and

most federal district courts (like the Northern District of Texas) have rules permitting admission of lawyers licensed in any state, See generally, RESTATEMENT [THIRD] OF THE LAW GOVERNING LAWYERs §3(2) (2001); The Supreme Court of Texas Professional Ethics Committee, TX. ETH. OP. 516 (1996).

Out of an abundance of caution, Mr. Merritt has decided *not* to file another motion seeking *pro hac vice* admission in any Texas state court.[6] That decision was a matter of choice by Mr. Merritt, and he has not, under the consent judgment or otherwise, lost his right to practice law in any court. He clearly is not prohibited —and has neither lost nor surrendered—his right to seek *pro hac vice* admission in any Texas court. His right to apply for *pro hac vice* admission in compliance with Texas' Rule XIX is expressly recognized in the consent judgment.

Mr. Merritt is serious about social justice, and about practicing law. His energy and his life's work are devoted to efforts to bring about change, and he has chosen to use his education, his skills, and his law license in pursuit of that end. His modest success as a young lawyer in connection with his personal injury practice in Pennsylvania and New Jersey has permitted him the luxury of pursuing his passion for social justice. Mr. Merritt appreciates his admission to the bar of the

---

[6] Mr. Merritt has in recent months filed an application for admission *pro hac vice* in one case in a New York state court and another in one case in a federal district court in California.

Northern District of Texas, and he takes his oath to support the Constitution of the United States seriously. He sincerely hopes that this Court will confirm that he did not, by agreeing to dispose of the suit filed against him by the UPLC in accordance with a consent judgment negotiated in good faith by his lawyer, endanger his right to continue his work.

Respectfully submitted,

WYNNE & WYNNE
137 W. James Street
Wills Point, Texas 75169
Telephone: (903) 873-2531
Facsimile:(903) 873-3450

By: /s/ Prater Monning
    B. Prater Monning III
    State Bar No. 14269700
ATTORNEYS FOR MR. MERRITT

VERIFICATION

I confirm that I acted as counsel for Lee Merritt in connection with the disciplinary complaint and actions initiated by the Texas Unauthorized Practice of Law Committee discussed in this Response. The facts set forth in this Response pertaining to those matters are true, and all facts and arguments herein are believed to be true within the meaning and spirit of Rule 11.

/s/ Prater Monning